The judgment of the court was pronounced by
Eustis, C. J.
This is an appeal from a judgment of the-court of the Fifth District of New Orleans, by which the plaintiffs recovered from the defendants one undivided third of certain lands situate in the parish of Concordia. The judgment also dismissed the petitions of intervention of John McDonogh and of George T. Williams 8f Co.., creditors of Rice Garland, one of the defendants. The appeal is taken by the defendants and the parties intervening, and the case has been argued by the counsel of each.
The petitioners, daughters and heirs of Jonah Bastable, deceased, claim of the defendants the undivided third of a tract of land situate at the confluence of the Ouachita and Black rivers, in the parish of Concordia, said tract containing forty thousand superficial arpents.'
The title set up by the plaintiffs is a deed made by the sheriff of the parish of Orleans on the 25th June, 1828, which recites that at a public sale, after legal advertisements, made by said sheriff -on the 10th May of the same year, under an order of the District .Court of the First Judicial District of the State of Louisiana, in the ease of Louis Bringier v. His Creditors, the property therein described was adjudicated to Isaac Lambert, Jonah Bastable, and William Brothers. The description of this property in said deed is as follows : “A claim for forty thousand arpents of land in Ouachita, situated at the confluence of Ouachita and Black rivers, granted to the said Bringier through his father, by the Baron de Carondelet in 1796; the original titles certified by Gurley, Register of the Land Office, were given to T. B. Robertson, Esq. whilst our representa *420 tive in Washington City, in the year 1815. It is probable that a duplicate drawn out of the office of the late Mr. Bouchou, Surveyor General of this State, about the year 1820, and forwarded to the western land office, has been there recorded ; however, Mr. Bouchou kept a copy, which is in the records under the charge of the surveyor general.”
This sheriff’s deed was recorded on the 27th June, 1827, in the clerk’s office of the First Judicial District Court. It was also registered in the office of alienations in the parish of Orleans, about the same time. It was a third time registered in the land office at Munroe, (being the United States land district in which the land was situated) at a time which is not shown by the evidence, but which must have been about the 8th February, 1837', because the said registry was mad;e under the actpf Congress i‘ for the final adjustment of claims to lands in the State of Louisiana,” approved the 8th February, 1,835; by which act the limitation for recording evidence in support of claims was two years, counting from the passage of said act. Finally, the sheriff’s deed in question appears to have been recprded a fourth time, in the office of the recorder of the parish of Concordia, on the 21st December, 1846.
The title of defendants is a notarial act of sale from Louis Bringier to Thomas Curry and Rice Garland, passed at New Orleans before Seghers, notary, on the 13th April, 1841. The description of the property in the conveyance is as follows: “All the right, title, interest, and claim, that he (the vendor) may have in and to a certain tract or parcel of land situate in the county of Concordia, on the east bank of .the Rio Negro, commonly called Black river, commencing at the mouth of the bayou Tensas, having such front on said Black river, running back on the lower line east fourteen hundred perches or poles, on the back line running north two thousand eight hundred perches or poles, and on the upper-line three hundred and eighty perxlres or poles on the bayou Tensas, thence to the mouth of said bayou, as will give the superficial quantity of forty thousand arpents, according to a plan of survey made by Don Carlos Trudeau, formerly Surveyor General of the Province of Louisiana, on the ,4th September, 1796, in obedience to an order of survey given by the Baron Carondelet, formerly Governor of the Province of Louisiana, the original plan of survey has been delivered by said Louis Bringier to the purchasers, who acknowledge the receipt thereof.”
This act of sale from Bringier to Curry and Garland appears -to have been recorded in the notarial records of the parish judge of Concordia parish, on the 11th May, 1841. The interest of Rice Garland in the property thus purchased was divested by a sheriff’s sale, under a writ oí fieri facias issued upon a judgment obtained by the Bank of Louisiana against said Garland. This sheriff’s sale took place on the 5th December, 1846, and the defendant Stacy, being the highest bidder, the -interest of Garland in the Bringier claim was adjudicated to him.
It is thus seen that the plaintiffs and defendants both hold under Bringer, and the controversy is, in which of these parties the right of Bringier is vested. The Bringier claim having been affirmed by -the United States Court for this district, by judgment rendered at the suit of Garland and Curry v. The United States, which judgment -is now final, the party in whom the right of Bringier is must recover the property. Of the three parties, purchasers at the sheriff’s sale of the 10th May, 1828, two intervened in the suit in the United States Circuit Gourt, and the two undivided thirds of Lambert and Brothers, in the said purphase at sheriff’s sale, became vested in the defendants by compromise.
*421 The evidence shows that Louis Bringier, the original claimant of this large tract of land, filed his petition for the benefit of the act for (he relief of insolvent debtors in actual custody, in tho District Court of the First Judicial District of the State of Louisiana, on the 3d November, 1827. Annexed to his petition was a schedule, containing a statement of his debts and also of his property, as required by the act of 1808. One of the items of property on Bringier's schedule (the fourth) is that now in controversy; which is described in said schedule in the identical words of the description in the sheriff’s deed to the ancestor of plaintiffs, which have been copied.
Upon the filing of this petition and schedule, an order of court was made for notice to Bringier’s creditors to appear in open court on the 26th November, 1827, to show cause, if any they had, why the petitioner should not be discharged according to the prayer of his petition.
On the 26th November, 1827, the day fixed by the said order, the record shows that Bringier appeared in court, and having made an assignment of all his property to the sheriff of the parish of Orleans, in trust for the use of his creditors, and having taken the oath prescribed by law, and no opposition having been made to his discharge, judgment was rendered discharging him from imprisonment.
The record also contains the assignment, signed by Bringier, which is in the following words: “I, P. L. Bringier, do hereby assign and transfer to the sheriff of the parish of Orleans, in trust for the security of my creditors, the whole of my property as contained in my schedule.”
We have seen that the sheriff sold on the 10th May, 1828, the property in question. The deed slates that it was made on an order of court, given in the case of Bringier v. His Creditors. The record of the casé of Bringier v. His Creditors does not exhibit any special order of court for the sale of the property, but it is, perhaps, to be presumed there was such an order. Nothing, indeed, in the act of 1808 requires a special authorization of court to the assignee of the insolvent debtor, for the sale of the property assigned to him in trust for the creditors. In this respect, this law differs from the law of 1817, regulating the proceedings in a cessio honorum. By the 30th section of that law, the syndic must present his petition for the sale of the property surrendered. We are of opinion, that the non-exhibition of an order of sale does not invalidate the plaintiffs’ title.
The statement of the titles under which the plaintiffs and defendants respectively claim, we have taken from the able and well prepared opinion of the learned Judge of the Fifth District Court of New Orleans, in the leading doctrines of which, we fully concur.
Although the two defendants claim under the insolvent Bringier, yet Stacy does not hold directly from him. He purchased the interest of Garland at sheriff’s sale under a judgment against Garland in favor of the Bank of Louisiana. This sale was made on the 5th of December, 1846. The claim of Curry and Garland to the land had then been confirmed by the court of the United States. The title of Garland was then a judgment, and the land thus held by Garland in his name was purchased by Stacy and paid for by him to the seizing creditor. It is obvious, that his position in relation to the plaintiffs is materially different from that of the other defendant who claims under a sale from the insolvent previous to the confirmation of the Bringier claim. According to numerous decisions of this court, the plaintiffs’ rights being strictly equitable, and having permitted Garland to take and hold one-half the property in his own *422 name, those rights cannot be enforced to the detriment of bond fide judgment creditors of Garland, or purchasers for a valuable consideration, without notice. The respective rights, therefore, of the two defendants, depend upon different principles.
Curry, as we have seen, claims under a recorded authentic act from Bringier, and Bringier had previously ceded his interest in the lands to his syndic for the benefit of his creditors. The assignment which he made in open court was not recorded, nor was the sheriff’s deed to the plaintiffs’ ancestor in the parish of Concordia, where the lands are situated. The principal argument of the defence has been directed to the effect of this non-recording. It is said that it renders the sheriff’s deed without effect as to third persons. There does not appear to have been any notice on the part of the defendants of the title of the plaintiffs; there is no allegation or evidence to this effect.
The district judge was of opinion, that the sale by the syndic was not one of lands required to be recorded under the registry acts, but of a claim to lands under a title not confirmed by the government of the United States, and that a registry of the proofs of the claim and transfer in the land office of the district within which the lands were situated, was a sufficient recording to give effect to the sale to the ancestor of the plaintiffs.
The right which the insolvent ceded to his creditors, appears in his schedule as “my claim in 40,000 arpents of land in Ouachita,” situate, &e.
The sheriff’s deed describes it asa “claim for 40,000 arpents of land in Ouachita,” situate, &c., and purports to transfer to the purchaser the above described claim, and all the right, title and interest which the said insolvent or his creditors had on the 3d of April, 1828, or at any time since had in or to said land, or any part thereof, &c.
Curry and Garland on the 13th of April, 1841, from Bringier bought what? Let the act speak for itself: “Personally came and appeared Louis Bringier, residing in the city of New Orleans, who declared that for and in consideration of the sum of five thousand dollars to him in hand paid in ready money by the hereinafter named purchasers, the receipt whereof he does hereby acknowledge, he, the said Louis Bringier, does, by these presents, sell, bargain and convey, assign and make over forever unto Thomas Curry of New Orleans, and Rice C. Garland of Opelousas, both here present and accepting jointly each for one undivided half, all the right, title, interest and claim that he may have in and to a certain tract or parcel of land situate in the county of Concordia, on the east bank of the Rio Negro, commonly called Black river,” &c.
The act recites, that the original certified plan of survey has been delivered by said Bringier to the purchasers, who acknowledged the receipt thereof; that the sale is made without any warranty on the part of Bringier, except against himself, his heirs, and those claiming under him,- and that the purchasers knowing that said title has not been confirmed by the United States, they take upon themselves all the risk and expense of procuring the confirmation thereof.
This purchase from Bringier, fourteen years after his bankruptcy and after the sale of the same thing by his syndic to the plaintiffs’ ancestor, turns out to be a simple quit claim on the part of Bringier of the right and interest he may have in the object sold. Bringier does not undertake even to declare that he has any real interest in it. He knew he had ceded it to his creditors to be applied to the payment of his debts, and he knew it had been sold for that object. Hence the unusual, guarded and equivocal description, the use of the words “may have," and the exclusion of any warranty on his part, except against him *423 self, his heirs and those claiming under him. Had he undertaken to have sold a subsisting right, his warranty and his word would stand falsified by his transfer to his creditors. He sells a mere contingency, and the whole affair was a speculation on the part of the purchasers on the chances of giving it such a direction as would ensure its success.
As this claim has resulted in a judgment of a court in favor of the title to the purchasers, it is not necessary that we should make any statement in relation to it, except that we concur with the district judge in the opinion, that it is not within the letter or purpose of the registry acts. It is not a claim by which lands are to be affected in the language of the statute.
If any right can be predicated of the claim, it falls under that class denominated incorporeal rights. No action could be maintained for the possession or ownership of the land under this claim, as it is in evidence before us; and we can consider it as having no force or value whatever, except as addressed to the bounty of the government of the United States.
We do not think, therefore, that the rights of the respective parties as they are presented before us by the evidence and arguments of counsel, rest upon the rules of the petitory action. The legal title, or indeed the only title, is in the defendants. The plaintiffs’ rights are strictly equitable; and the real question is, whether the judgment obtained, by which the title has been vested in the defendants adversely to the United States, inures to the benefit of the plaintiffs to the extent of their interest.
In order to complete the transfer to the ptochasers of the claim under the syndic’s sale, all that it was in their power to do was to record it in the land office of the district where the lands were situated. The transferree is only possessed of the thing transferred, if it be debt, right or claim, after notice has been given to the debtor. If there was any obligation attached to this claim, the United States owed it, and the land office was the proper office to notify of the transfer. We find that a copy of the plan of survey, as it is called, the original of which is said to have been delivered by Bringier on the sale to Curry and Garland in 1841, (which is the only evidence of any claim which has been before us,) was, together with a copy of the deed of the sheriff as syndic, filed in the land office at Monroe, under the act of Congress of February C, 1835, and a favorable report from the land officers solicited in behalf of the claim. We think these documents are to be taken as having been filed under that act, or with a view of taking that benefit of it, and consequently previous to its expiration, or within a short time after; at all events, previous to 1841.
The proper notice having been given of the transfer of the claim, it results that Bringier, when he made the quit claim to Curry and Garland, had no interest whatever in it. The defendants are presumed to have been cognizant of the proceedings in insolvency of Bringier and of the assignment made by him under it. The judicial proceedings carry with them notice ; and the assignment made in court to the syndic had the same effect as if recorded in the parish where the lands were situated, there being no law requiring such assignments' to be recorded. They were buying a land claim, and the land office was the’ proper place to look for the evidence of its ownership. They knew it had never been confirmed, and they knew that if it was not a fraud it must be registered among other claims for land according to the laws of the United States. The’ reserve with which Bringier invests his obligations in the act of sale, would create distrust in the mind of any bond fide purchaser. We think, with the *424 district judge, that the defendants bought the claim cum. more, and must account to the plaintiffs for the share of their ancestor in it.
We soe no reason why the interventions should be sustained, and. think the district judge did not err in dismissing them.
The judgment of the court, so far as relates to Stacy, we think erroneous.
It is therefore ordered, adjudged and decreed, that the judgment of the court below, so far as the same relates to the defendant David S. Stacy be reversed, and that there be judgment in his favor for one-sixth part of the grant, and that he be forever quieted in his title to the same against the pretensions of the plaintiffs. It is further ordered and decreed, that as it relates to the defendant Thomas Curry, the judgment of the court below be affirmed; and that the plaintiffs recover one undivided sixth of said grant, subject to the reservations in the judgment of the court below, to wit, that the allowance of 3000 acres of said land, for the payment of counsel’s fees, be first deducted from the whole grant, and borne by the parties in proportion to their interest in the same. And it is further ordered, that as it relates to the defendant Curry, the case be remanded for further proceedings according to the agreement of the parties and the judgment of the district court; and that one-half of the costs of the court below and on this appeal, be paid by the defendant Curry, and one-half by the plaintiffs. And it is further ordered, that the judgment dismissing the intervenors be affirmed, with costs in both courts.